## THE CHARLES TIBERGHIEN.

### (District Court, E. D. New York. November 21, 1905.)

SHIPPING—INJURY TO STEVEDORE—LIABILITY OF VESSEL.

  A vessel *held* not liable for an injury to a stevedore caused by his stepping upon a section of a hatch cover which his fellow workmen, who were at the time engaged in covering the hatchway, had temporarily left in an insecure position so that it tilted and allowed libelant to fall into the hold; it not being shown that the cover was defective in construction or out of repair.

  [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 349–351.]

In Admiralty. Action for personal injury.

Hover & Pettigrew, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. The steamship was lying with her starboard side to the dock, bow in, when the libelant fell through hatch No. 4, under the following circumstances:

Some stevedores were in possession and control of the cargo spaces of the ship for the purpose of loading, and during the day in question had been loading at hatch No. 4. When the men stopped work in the afternoon, they came up from below, and found that the fore-and-after, which extended the entire length of the hatch, had been put in place by the direction of the foreman in charge, whereupon three men began to put on the covers on each side of the fore-and-after, without the presence of the cross beam, into a socket in which the fore-and-after fits. These men claim that they first put a cover at each end on the starboard side, and then laid the covers in the fore part of the port side, when finding that the fore-and-after was sprung to starboard, so that the covers nearer the center were too short, they began at the aft part on the port side, and laid all the covers but one, and stood waiting for more covers to be laid on the starboard side, so as to bend back the fore-and-after to port, when the libelant came up the companionway aft of the hatch, passed over the top of the barrels on the starboard side, stepped on to the starboard side, and thence down upon the last cover which had been put on by the men on the port side, whereupon the same tilted, and the libelant fell through into the lower hold. The covers were marked with Roman numerals, each numeral being followed by the letter B or the letter T, to indicate whether it was a port or starboard cover, B being the first letter of the French word "Babord" (port), and T being the first letter of "Tribord" (starboard). The libelant's witnesses state that they paid no attention to the numbers, but put the boards on as they found them lying along the hatch, and that it was the custom of the stevedores to replace the covers in the way that they were laid when taken off. There is, however, evidence that the covers were laid in different shapes on the deck. The men laying the forward port covers learned when reaching the center that they were too short, and so began at the after end, and so dangerously

short did they become that the men in laying them did not venture to step on them, but one man, as each board was laid, crawled along the fore-and-after, and put it in place there. The board which tilted was held only by the forward corner, while the after corner did not rest at all upon the fore-and-after. The men knew that this cover was not properly placed, and it is considered that it had not been laid with the intention of leaving it, for all three men on the port side testify that they knew that it was dangerous, and that when they saw the libelant coming, they would have prevented his stepping upon it by calling out, but that he came so quickly they did not have an opportunity. The libelant was coming over for the purpose of assisting in laying the covers on the port side. There was no occasion for his stepping on the board, nor did he stop to see whether the board was in place, or what its condition was. He knew the work he was to aid was incomplete, and had he given any attention he would have noticed that the third cover was only temporarily laid. In the first place, there was a cross-beam which should have been laid down, and the fore-and-after when fitted to it could not have bent. Evidence is given that it was not the custom of stevedores, where there is a single fore-and-after, to put in the cross-beam at night. But the ship furnished a perfectly good and reliable plan of hatchway. The cross-beam was undoubtedly there, and if the men did not use it, it was either the fault of the stevedore himself in allowing such a system to prevail, or it was the carelessness of the operatives in using the appliances that were present. Moreover the covers were numbered, so that each might be put in its appropriate place, and if the men put on the covers without paying any attention to the order in which they should go, according to their numbering, it was not the fault of the ship. In addition, it was perfectly apparent to the men who laid this third cover that it did not belong there, at least that it did not fit, and it was entirely their act that it was left even for an instant in such perilous condition that a person could not step upon it without falling. But these men did not intend to let it remain, or that it should be used. They were merely letting it rest for a brief time in its dangerous position, for the starboard covers to be put on. While the work thus halted, the libelant stepped upon the cover, obviously incomplete in position, and without taking pains to ascertain its condition. But it further appears that on each side of the hatch are two covers, which fit next to the cross-beam when it is in place, and that, to allow these covers to fit up around the socket into which the end of the cross-beam lies, they are notched at the coaming end for the distance of eight inches across and five-eighths of an inch in; and it is a fair inference that in the disorderly manner in which the men were putting on the covers, they did put this cover in the wrong place, so that while one corner of it would be supported, the other, being five-eighths of an inch shorter, had no rest upon the angle-iron on the fore-and-after. There is evidence on the part of the libelant that the four-and-after was sprung three inches. As the covers had only an inch and a half to rest upon, at either end, if the fore-and-after was sprung three inches at the center, there would be no support

whatever for the covers at that point. Moreover, the foreman who put the fore-and-after in place, before the men came up and stood behind it, seeing that the end nearest him was properly adjusted, and looking across to see that the same was the case with the other end, would have discovered any marked bend in a fore-and-after 19 feet long. But he says he did not notice it. Mr. Martin and Mr. Wilkinson, who superintended the building of the ship, examined the hatch afterwards and found the hatch in good condition. Martin states that he had all the parts unshipped, and that the fore-and-after was substantially straight, although there might have been a slight deflection. These men state also that the fore-and-after could not have a lateral spring at the maximum of more than an inch and a quarter, without breaking the strip which makes the angle iron which extends the whole length of the fore-and-after. It is probable from the evidence that merely putting covers down on the port side, in absence of covers on the starboard side, would not give sufficient force to bend the fore-and-after, but if they were driven down hard, or if too much force was used in shoving them in, that result might follow. It further appears that the proper way to put on the covers is to lay them with some correspondence on the port and starboard side, so as to prevent lateral pressure. Irrespective of such inquiry, however, it is considered that the accident happened because the man had incompletely laid a hatch cover that did not fit, and that they had not finished their work when the libelant came and stepped upon the partially supported cover. The careful brief of the libelant's proctors does not change the view entertained at the close of the trial, that the libelant was injured in the course of progressing work, while using a structure which his fellow laborers were engaged in perfecting, and to whose assistance he came, and that the ship is not chargeable.

The libel is dismissed.